IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


HAAS DOOR COMPANY,

                              Plaintiff,                    Case No. 3:13 CV 2507

            -vs-
                                                           MEMORANDUM   OPINION
HAAS GARAGE DOOR COM,PANY,

                              Defendant.

KATZ, J.

Haas Door Company has sued Haas Garage Door Company alleging trademark

infringement under 15 U.S.C. § 1114(1); false advertising, unfair competition, false designation of

origin, and express reverse passing off under 15 U.S.C. § 1125(a); and deceptive trade practices

under Ohio Rev. Code Chapter 4165.  (Doc. Nos. 1, 46).  Haas Garage Door filed a counterclaim

for declaratory relief asserting that Haas Door's federal trademark registration for "Haas Door - A

Nofziger Company" (plus design) was invalid as the registration application for the trademark

contained a false statement of material fact.  As a result, Haas Garage Door seeks the cancellation

of the federal trademark.  (Doc. Nos. 9, 47).

Haas Garage Door has moved for summary judgment on its counterclaim seeking

cancellation of Haas Door's federal trademark.  Haas Garage Door has also moved for summary

judgment regarding ownership of the marks HAAS, HAAS DOOR, and HAAS DOOR

COMPANY.  The company seek summary judgment regarding Haas Door's claims under § 1114

and § 1125(a).  Haas Garage Door states it is entitled to summary judgment under Ohio Rev. Code

§ 4165.02 with respect to the HAAS mark.  Finally, Haas Garage Door seeks a ruling on the

entitlement of Haas Door to attorney's fees.  (Doc. No. 51).

Haas Door, on the other hand, requests summary judgment on Haas Garage Door's counterclaim regarding the validity of the federal trademark.  In addition, Haas Door seeks summary judgment regarding its allegations Haas Garage violated its rights to the AMERICAN TRADITIONS SERIES trademark under 15 U.S.C. § 1125(a)(1)(A) and Ohio Rev. Code Chapter 4165; and Haas Garage Door's liability regarding false advertising under 15 U.S.C. § 1125(a)(1)(B).  (Doc. No. 53).

Haas Door makes it explicit that it is not seeking summary judgment regarding its claims for trademark infringement under 15 U.S.C. § 1114; infringement/false designation of Origin/Express Reverse Passing Off with respect to the trademarks HAAS, HAAS DOORS, and HAAS DOOR COMPANY under 15 U.S.C. § 1125(a)(1)(A); deceptive trade practices with respect to the trademarks HAAS, HAAS DOORS, and HAAS DOOR COMPANY under Ohio Rev. Code Chapter 4165; willful infringement with respect to the trademarks HAAS, HAAS DOORS, and HAAS DOOR COMPANY, and AMERICAN TRADITIONS SERIES under 15 U.S.C. §§ 1114, 1117, and 1125, and Ohio Rev. Code Chapter 4165; and a determination that this is an "exceptional case" under 15 U.S.C. § 1117.  Further, Haas Door is not seeking judgment regarding any remedies.  (Doc. No. 53).  Haas Door has requested oral argument regarding the pending motions.  (Doc. No. 57).

The issues have been fully briefed by the parties.  (Doc. Nos. 51, 53, 57, 58, 59, 60).  The Court does not feel oral argument is necessary given the outstanding briefing of the issues by counsel for both parties.  Therefore, Haas Door's request for oral argument is denied.

2

I.  Jurisdiction and Venue

The Court finds that it has jurisdiction over this action pursuant to 15 U.S.C. §§ 1119 and 1121, 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367.  Venue is also properly before this Court. *See* 28 U.S.C. § 1391; N.D. Ohio R. 3.8.

II.  Facts

The following facts are undisputed.  The case involves a family owned business which was eventually split into two independent entities, with each business using the same distinctive name in connection with separate goods and services.  The parties agree that the ramifications of trademark law to the facts of this case are unique.

In 1953, Kenneth Haas and his father Ernest, founded Haas Door Sales, which eventually became Haas Door Company and Haas Garage Door Company**.**  Haas Door Sales focused exclusively on the retail sales and installation of garage doors.  However the company engaged in very limited manufacturing just prior to the incorporation of Haas Door Company on June 28, 1961.  Haas Door was incorporated for the purpose of manufacturing garage doors, and conducted its manufacturing operations under the HAAS trademark.

Haas Garage Door Company was incorporated on June 3, 1965.  The purpose of Haas Garage Door was for the sales of retail garage doors.  Thus, since 1965, Haas Door and Haas Garage Door have had separate and distinct purposes while still using the HAAS mark.  Haas Door uses the mark for the design, manufacturing, and branding of garage doors.  In contrast, Haas Garage Door uses the mark for the retail sale, installation, and repair of garage doors.  The evidence shows that Haas Garage Door has never been in the business of manufacturing garage doors.

3

As a result of the incorporation of the two businesses, two formal entities existed, both owned and operated by Kenneth Haas, both using the Haas name.  After the creation of Haas Door and Haas Garage Door, Haas Door Sales ceased to exist.

In 1989, Kenneth Haas and Donald LaHote were the only shareholders of Haas Door.  At this time, Kenneth Haas and Mr. LaHote sold their entire interest in Haas Door to Masco Industries, Inc.  Kenneth Haas admits that as a result of th sale, he was no longer permitted to manufacture garage doors.

Pursuant to the sale, Kenneth Haas and Mr. LaHote entered into non-compete agreements with Masco Industries that controlled their rights to continue their business through Haas Garage Door.  The sale to Masco Industries resulted in the transfer of all rights to manufacture and brand garage doors using the HAAS mark.  Further, all the garage door manufacturing equipment was sold to Masco Industries as part of the sale of Haas Door.

Following the sale of Haas Door to Masco Industries, Kenneth Haas spent approximately three years as an employee of Haas Door for the purpose of training someone to replace him.  He subsequently retired from the manufacturing business.

Masco's purchase was only for Haas Door, not Haas Garage Door.  Upon the sale of Haas Door, the two companies ceased to have common owners.  Haas Door was owned by Masco, while Haas Garage Door was still owned by Kenneth Haas and Mr. LaHote.

Masco's agreement with Kenneth Haas and Mr. LaHote allowed these individuals to "continue to engage in retail sales of products of the type designed, developed, manufactured, sold or marketed by [Haas Door] Company at or prior to the date hereof in the geography area in which such products were heretofore distributed by Haas Garage Door Company."  Thus, as a result of

4

the sale, Haas Door would manufacture and sell, at the wholesale level, garage doors, while Haas Garage Door would sell at the retail level, install, and repair garage doors.

Masco Industries subsequently became MascoTech, continuing to own Haas Door from 1989 until 1995.  In 1995, Nofziger Doors International purchased Haas Door Company from MascoTech.  Prior to the sale, Nofzinger Doors was a garage door and parts distribution company owned by the Nofziger family.  Since the 1995 purchase, Edward Nofziger and his wife Carol have been the sole owners and board members of Haas Door Company.  Edward Nofziger is currently the Chairman of the Board of Haas Door Company, prior to which he was President of the company.  Although the transfer of Haas Door from MascoTech to Nofzinger included a list of intellectual property rights which was transferred, the HAAS trademark, or any variation of the word, was not specifically included.

Kenneth Haas remained the owner of Haas Garage Door until the late 1990's when he transferred his ownership interest in the company to his son Tom Haas.  Tom Haas, his wife, and two daughters are owners of the company, with Tom Haas serving as President.

The two companies co-existed through the years, each maintaining their respective business operations, and each continuing to use the HAAS name.  Haas Door continued to manufacture garage doors at the wholesale level, while Haas Garage Door continued to conduct retail sales and installation of garage doors.  Haas Garage Door was even an authorized dealer of Haas Door.  Tom Haas, as an employee of Haas Garage Door, has been selling Haas doors since 1986.  As of 2012, Haas Garage Door even was recognized by Haas Door for its outstanding sales achievements.  However, a dispute arose between the companies and Haas Door terminated Haas Garage Door's authorized dealership.

On July 21, 2001, Haas Door filed a trademark registration application with the United States Patent and Trademark Office.  The mark (Attachment) was in connection with "metal, insulated garage doors for residential and commercial use; and garage door hardware, including, rails, hinges, tracks, brackets, jambs and handles."  The application stated that the HAAS mark was first used in commerce in 1954; the door design was first used on the goods in interstate commerce in 1994; the mark as a whole was first used on goods in 1995, and the mark as a whole was first used on the goods in interstate commerce in 1995.  The application resulted in United States Trademark Registration No. 2,594,359.

### III.  Standard of Review

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting a genuine issue of material fact must support the argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  A court views the facts in the record and reasonable inferences which can be drawn from those facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  A court does not weigh the evidence or determine the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an

6

absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986) (internal quotation marks omitted).  If the moving party satisfies this burden, the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing Rule 56 and *Matsushita,* 475 U.S. at 586).  The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over material facts remain; evidence which is "merely colorable" or "not significantly probative" is insufficient.  *Anderson,* 477 U.S. at 248–52.

## IV.  '259 Reg. Trademark

Haas Garage Door seeks cancellation of Haas Door's '259 Reg. trademark while Haas Door seeks summary judgment upholding the validity of its trademark.  For the reasons stated below, the Court upholds the validity of the trademark.  Thus, Haas Garage Door's motion for summary judgment is denied and Haas Door's motion for summary judgment is granted.

Congress enacted the Lanham Act in 1946 in order to provide national protection for trademarks used in interstate and foreign commerce.  *Park'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 193 (1985) (citing S. Rep. No. 1333, 79th Cong., 2d Sess., 5 (1946)).  Under previous statutes, federal law reflected the position that protection of trademarks was a matter of state concern and that the right to a mark depended solely on the common law.  *Id.*  "Because trademarks desirably promote competition and the maintenance of product quality, Congress determined that a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them."  *Id.* (internal quotation marks and citation omitted).

As a result, the Lanham Act created new protections that allowed a federally registered mark to become incontestable.  *Id.*

The Lanham Act defines a trademark as "any word, name, symbol, or device" used or intended to be used in commerce "to identify and distinguish . . .  goods . . . from those manufactured or sold by others."  15 U.S.C. § 1127.  Registration of a mark entitles the owner to sue for infringement of the mark under § 1114 and bestows upon the mark a presumption of validity under 15 U.S.C. § 1057(b).  *See Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).  The registration ordinary renders the registered mark incontestable after five years of continuous use.  *Id.* (citing 15 U.S.C. § 1065).

Under the Lanham Act, registration and incontestability distinguish a mark that is "the common descriptive name of an article or substance" from a mark that is "merely descriptive." *Park'N Fly, Inc.*, 469 U.S. at 193–94 (internal quotation marks and citations omitted).  "Marks that constitute a common descriptive name are referred to as generic.  A generic term is one that refers to the genus of which the particular product is a species."  *Id.* at 194.  "Generic terms are not registrable, and a registered mark may be canceled at any time on the grounds that the term has become generic."  *Id.*  In contrast, a "merely descriptive" mark "describes the qualities or characteristics of a good or service, and this type of mark may be registered only if the registrant shows that it has acquired secondary meaning, *i.e.*, it has become distinctive of the applicant's goods in commerce."  *Id.* (internal quotation marks and citations omitted).

Although a mark may have become "incontestable" pursuant to § 1065, that status merely creates a presumption of validity, and does not bar certain statutory challenges.  Because the mark is incontestable, Haas Garage Door has the burden of proving its assertions and rebutting the

8

presumption that the trademark is valid. *See Fuji Kogyo Co. v. Pacific Bay Int'l, Inc.*, 461 F.3d

675, 683 (6th Cir. 2006); *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 405 (6th Cir.

2002); *see also* 15 U.S.C. § 1115(a) (a registered mark is "prima facie evidence of the validity of

the registered mark and . . . of the registrant's . . . exclusive right to use the registered mark . . . .").

In its attempt to invalidate Haas Door's trademark, Haas Garage Door asserts the federal

registration was fraudulently obtained.  Specifically, Haas Door made a false statement of material

fact with the intent to deceive the United States Patent and Trademark Office when Edward

Nofziger signed the declaration on the trademark application.

On July 21, 2001, Haas Door filed a trademark registration application for its mark

(Attachment 1) in connection with "metal, insulated garage doors for residential and commercial

use; and garage door hardware, including, rails, hinges, tracks, brackets, jambs and handles."  The

application stated:

> "HAAS' was first used in commerce in 1954; the door design was first used on
> the goods in interstate commerce in 1994; the trademark as a whole was first used
> on the goods in 1995; the trademark as a whole was first used on the goods in
> interstate commerce in 1995.

Mr. Nofziger signed the application's declaration which states, in part:

> The undersigned . . . declares that . . . to the best of his knowledge and belief no other
> person, firm, corporation, or association has the right to use the above mark in
> commerce, either in the identical form thereof or in such near resemblance thereto
> as to be likely, when used on the goods or services of such other person, to cause
> confusion, or to cause mistake, or to deceive.

Haas Garage Door argues that despite the language of the declaration, Mr. Nofziger

testified when he signed the declaration, he was aware of the existence of Haas Garage Door and

he was aware Haas Garage Door was using the HAAS name.  Haas Garage Door also emphasizes

Mr. Nofziger testified the "house design" in the trademark was first used by the Taylor

Corporation. Although the house design was first used by Taylor, the design was altered by changing the design from saying "Taylor Haas" to saying "Haas Door, a Nofziger Company." However, when Nofziger Doors International purchased Haas Door, Taylor Corporation was not part of the transaction.

In light of these facts, Haas Garage Door argues a trademark registration may be cancelled on the ground the "registration was obtained fraudulently." 15 U.S.C. § 1064(3). "Fraud in procuring a trademark registration . . . occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986). A trademark is fraudulently obtained only if the applicant or registrant "knowingly makes a false, material representation with the intent to deceive the PTO." *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009). "[B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008).

Haas Garage Door asserts the trademark declaration signed by Mr. Nofziger was a false representation by Mr. Nofziger for two reasons. First, Mr. Nofziger admitted that at the time the declaration was signed, he was aware Haas Garage Door existed and was using the HAAS name. Second, Mr. Nofziger admitted the "house design" portion of the registered trademark had been used by Taylor Corporation and Haas Door had changed the mark from "Taylor Haas" to "Haas Door, a Nofziger Company."

Haas Garage Door argues Mr. Nofziger's subjective intent to deceive the United States Patent and Trademark Office is apparent from the fact that, being aware of its existence, Mr. Nofziger had considered changing the name of Haas Door. Haas Garage Door states there is no

10

evidence in the record which provides a reasonable inference that Mr. Nofziger had a good-faith belief he owned the HAAS mark.  Because the word HAAS is the dominant literal element of the trademark, the HAAS mark is confusingly similar to the '259 Reg.  Thus, according to Haas Garage Door, Mr. Nofziger knew Haas Garage Door was using in commerce a mark that so nearly resembled the '259 Reg. trademark for related goods and services that confusion would be inevitable.  Despite the confusion, Mr. Nofziger signed the declaration.

The Court disagrees with these arguments.  Both parties have separate and distinct rights in the HAAS mark.  It is a fundamental principal of trademark law that trademark rights arise not in gross, but by use of a mark in connection with *particular* goods and services so as to distinguish those goods and services from those of others.  *B & B Hardware, Inc. v. Hargis Indus. Inc.*, 135 S. Ct. 1293, 1299 (2015); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918).  Even identical trademarks can come to identify the respective goods or services of two entirely distinct businesses.  *See Lawrence-Williams Co. v. Societe Enfants Gombault Et Cie.*, 52 F.2d 774, 777 (C.C.A. 6th Cir. 1931).  Trademark rights arise from the actual use of the mark in commerce. *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998).

The HAAS mark is connected to two distinctively different goods and services.  When Kenneth Haas subsequently sold Haas Door, he sold half of his interest in the HAAS mark, that half being related to the design, manufacturing, and branding of garage doors.  However, he retained that portion of the HAAS mark regarding the retail sale and services of garage doors through Haas Garage Door.  The mark is distinctive as to two separate goods and services, and cannot be considered as one.

11

The rights in the HAAS mark for the design, manufacturing, and branding of garage doors were separated by Kenneth Haas from the rights for the retail sale, repair, and installation of garage doors pursuant to the 1989 sale.  The design, manufacturing, and branding rights to the HAAS mark were transferred to Masco Industries, and ultimately to Nofziger Doors International. When a business is sold, trademarks and the goodwill of the business are presumed to pass with the sale of the business.  *Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.*, 208 U.S. 554, 557–60 (1908);  *American Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446, 453 (C.C.A. 6th Cir. 1942).

There is no dispute that Haas Door was sold by Kenneth Haas to Masco Industries in 1989. Masco Industries's successor, MascoTech, then transferred the business to Nofziger Doors International in 1995.  No evidence suggests that the rights in the HAAS mark for the design, manufacturing, and branding of garage doors were not transferred in the sales.

Haas Door's exclusive rights in the HAAS mark for the design, manufacturing, and branding of garage doors is also established by its exclusive and continuous use of the mark over the years.  Haas Garage Door cannot have rights to the HAAS mark for designing, manufacturing, and branding of garage doors if Haas Garage Door never used the HAAS mark for those goods and services.  *See Allard*, 146 F.3d at 356.

Haas Garage has never used the HAAS mark for the design, manufacturing, and branding of garage doors.  Thomas Haas and his employees have conceded that Haas Garage Door has never and is not in the business of manufacturing garage doors.  Further, the non-compete agreements with Masco Industries specifically prohibited Kenneth Haas and Mr. LaHote from manufacturing garage doors, despite being permitted to continue to operate as a garage door

retailer and servicer.  Haas Garage Door even admits that the non-compete agreements prohibited Kenneth Haas and Mr. LaHote from manufacturing and branding garage doors.

It is undisputed that Haas Door has continuously used the HAAS mark in connection with the design, manufacturing, and branding of garage doors.  Given that Haas Garage Door has never used the HAAS mark for the design, manufacturing, and branding of garage doors, and that Haas Door has continuously done so since its incorporation, Haas Door has the exclusive right to use the HAAS mark regarding the design, manufacturing, and branding of garage doors.  *Id.*

Thus, there is no genuine issue of material fact regarding the ownership of the HAAS mark between the parties.  Haas Door owns the right in the HAAS mark regarding the design, manufacturing, and branding of garage doors.  Haas Garage Door owns the right to the HAAS mark with regards to the retail sale, installation, and repair of garage doors.  Because of this separation between the parties regarding their use of the HAAS mark in commerce, Mr. Nofziger's declaration on his application for the registration of the federal trademark was not fraudulent.  The declaration is correct.

To support its position, however, Haas Garage Door points to the portion of the declaration which states:

> no other person, firm, corporation, or association has the right to use the above mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on the goods or services of such other person, to cause confusion, or to cause mistake, or to deceive.

Haas Garage Door overlooks the clause "when used on the goods or services of such other person."  As the Court has explained in great detail, Haas Door, as it relates to the design, manufacturing, and branding of garage doors has the exclusive right to use the HAAS mark for these services.  Haas Garage Door does not.

13

The next element of the application which Haas Garage Door asserts is deceptive is the inclusion of the house design in the trademark.  Haas Garage Door contends the design was being used by another company, or the other company had the right to use the design when Mr. Nofziger signed the trademark application.

Although not addressed by the parties, the Court has serious concerns regarding whether Haas Garage Door has standing to contest the use of the house design.  Under Article III of the United States Constitution, Haas Garage Door must make out a "case or controversy" between itself and Haas Door to have standing.  *See Warth v. Seldin*, 422 U.S. 490, 498–99 (1975); *Ritchie v. Simpson*, 170 F.3d 1092, 1094 (Fed. Cir. 1999).  This requires that Haas Garage Door has "a personal stake in the outcome of the controversy" regarding the house design.  *Warth*, 442 U.S. at 498 (internal quotation marks omitted).  This Court's power "exists only to redress or otherwise to protect against injury" to Haas Garage Door.  *Id*.  Haas Garage Door has not explained how the use of the house design causes the company any injury.

The Sixth Circuit has observed the "issue of standing to sue . . . is closely related to the statute's declaration that a . . . plaintiff includes one 'who believes that he is or is likely to be damaged by the use of any such false description or representation.'" *Frisch's Rest.'s, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 649 (6th Cir. 1982) (citing 15 U.S.C. § 1125(a)).  The court noted the "statute demands only proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising."  *Id*. (citation and internal quotation marks omitted).  The court stated the correct standard "is whether it is likely that [Haas Door]'s advertising has caused or will cause a loss of [Haas Garage Door's] sales, . . . ."  *Id*. at 649– 50 (citation and internal quotation marks omitted).

14

Haas Garage Door has not demonstrated that it has a cognizable interest in the house design used by Haas Door. Haas Garage Door has established no likelihood of confusion about the origin and sponsorship of the products of Haas Door in relationship to its retail services. As Haas Garage Door has never had an interest in the house design used by Haas Door, the Court cannot see, nor has Haas Garage Door demonstrated, the company's standing to contest the house design used by Haas Door.

Assuming for argument that Haas Garage Door has standing to challenge the house design used by Haas Door, Haas Garage Door has not established the necessary deception to void the federally protected trademark. To establish a claim of deception, Haas Garage Door must show that Mr. Nofziger knowingly made materially false representations of fact in connection with the application. *In re Bose Corp.*, 580 F.3d at 1243. Haas Garage Door has the "heavy burden" of showing that Mr. Nofziger had the intent to deceive the United States Patent and Trademark Office. *Id*. A charge of fraud must be "proven to the hilt with clear and convincing evidence," and "any doubt must be resolved against the charging party." *Id*. (internal quotation marks and citation omitted). Haas Garage Door has not met this burden.

The record establishes that Nofziger Doors International has used the house design since 1995. Further, Mr. Nofziger's affidavit establishes that he believed that he owned the rights to the house design shown in the registered trademark as a result of Section 1.17 of the purchase agreement between Nofziger Doors International and MascoTech. Section 1.17 provides:

> Exhibit 1.17 includes a listing of all patents, patent applications, trademark registrations and applications for trademark registration owned by Haas. Haas is the sole and exclusive owner of all patents, patent applications, trademark registrations, and applications for trademark registration listed on Exhibit 1.17 and, to the knowledge of MascoTech, is the owner of (or has the right to use pursuant to common law, valid license or other permission) all other patents, copyrights,

15

trademarks, trade names, and service marks, whether registered or under common law, and all applications therefor that are pending or in the process of preparation, and all drawings, trade secrets, secret processes, and other proprietary rights of every kind and nature, in the United States and in foreign countries, which Haas is using in its business (collectively the "Intellectual Property"). Except as noted or referenced on Exhibit 1.17, the Intellectual Property is free and clear of any claims, liens, licenses, sublicenses, charges, or encumbrances, and no governmental registration of any of the Intellectual Property has lapsed, expired, or been canceled, abandoned, opposed, or the subject of a re-examination request. To the knowledge of MascoTech, (a) there has been no claims challenging the scope, validity, or enforceability of any of the Intellectual Property of Haas or alleging that any activity of Haas infringes upon the comparable rights of any third party, (b) Haas has conducted its business in a manner which does not infringe upon the comparable rights of any third party, and (c) no activity of any third party has infringed upon any of the Intellectual Property of Haas.

(Doc. No. 57-6, p. 5).

Under the terms of the sale's agreement, the sale of all trademarks, trade names, and service marks, whether registered or under common law, were sold to Nofziger Doors International on November 14, 1995. The mark in question shows the word "Taylor" with the house design and the word "Haas." Given provision 1.17 of the sales agreement, it would be very reasonable for Mr. Nofziger to assume that the house design, which was connected to the Haas name, was covered in the sale of the intellectual property rights of Haas. Because a charge of fraud must be "proven to the hilt with clear and convincing evidence," with any doubt being resolved against Haas Garage Door, *In re Bose Corp.*, 580 F.3d at 1243, Haas Garage Door has not met its burden of proof showing that Mr. Nofziger had the intent to deceive the United States Patent and Trademark Office. Therefore, the Court grants Haas Door's motion for summary judgment regarding the validity of the '259 Reg. trademark. The Court denies Haas Garage Door's motion for summary judgment requesting declaratory relief and the cancellation of the federal trademark.

### V.  The HAAS, HAAS DOOR, and HAAS DOOR COMPANY Marks

Haas Garage Door argues that Haas Door is not the common law owner of the HAAS mark and is not entitled to any relief with respect to the mark.  (Doc. No. 51, p. 11).  Haas Garage Door correctly observes that the words "door" and "company" are generic terms that add no secondary meaning or distinctiveness to the marks HAAS DOOR and HAAS DOOR COMPANY.  (Doc. No. 51, p. 19).  The dominant portion of each mark is HAAS.  The error which Haas Garage Door makes is arguing that the "co-extensive right to use the mark HAAS in connection with garage door-related goods and services precludes [Haas Door] from being able to establish superior rights in the marks HAAS DOOR or HAAS DOOR COMPANY in connection with garage door-related goods and services."

In order to establish a claim of infringement under § 1125(a), Haas Door must establish: 1) ownership of a specific service mark in connection with *specific* goods or services; 2) continuous use of the service mark; 3) establishment of secondary meaning if the mark is descriptive; and 4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties *respective* services.  *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991).

Haas Garage Door cannot "lump" all garage door related goods and services together and then claim that Haas Door is unable to use the HAAS mark because it has priority of continuous use.  Haas Door and Haas Garage Door each have their own separate sandbars in the stream of commerce.  Haas Door has the exclusive use of the HAAS mark for the design, manufacturing, and branding of garage doors.  Haas Garage Door, in contrast, owns the right in the HAAS mark with regards to the retail sale, installation, and repair of garage doors.  Haas Door even concedes,

17

and correctly so, that Haas Garage Door has the right to use the HAAS mark when it comes to the retail sale, installation, and repair of garage doors.

*Homeowners Group* explains that § 1125(a) requires ownership of the mark with regards to specific goods or services of the parties. *Id*. This is what exists in this case. There are two different parties with two different goods and services. Haas Garage Door cannot prevent Haas Door from using the HAAS mark with regards to the design, manufacturing, and branding of garage doors. Therefore, Haas Garage Door's motion for summary judgment on Haas Door's claims regarding HAAS, HAAS DOOR, and HAAS DOOR COMPANY under § 1125(a) is denied.

### VI.  Infringement Under § 1114

Haas Garage Door also seeks summary judgment on Haas Door's claim of infringement under § 1114. Haas Garage Door notes that § 1114 requires a finding of a likelihood of confusion among consumers as to the origin of the goods or services offered by the parties. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Haas Garage Door contends that Mr. Nofziger knew Haas Garage Door was using the HAAS name. Thus, despite this knowledge, Mr. Nofziger signed the declaration regarding the '259 Reg. As a result, Haas Door is estopped from claiming the likelihood of confusion regarding the federal trademark. Haas Garage Door therefore asserts that it is entitled to summary judgment regarding Haas Door's claim for infringement of the registered mark under § 1114.

As the Court has gone to great lengths to explain, the declaration for the '259 Reg. was correct. The federal trademark is valid. Haas Door has the right to design, manufacture, and brand garage doors and the company has the right to prevent the mark's infringement as to these

goods and services.  The two companies have separate rolls in commerce and Haas Door has the right to protect its trademark with regards to its goods and services.  Haas Garage Door's motion for summary judgment regarding Haas Door's § 1114 claim is denied.

## VII.  Ohio Rev. Code § 4165.02

Haas Garage Door argues that it is entitled to summary judgment regarding Haas Door's allegations of unfair competition and deceptive and unfair trade practices under Ohio Rev. Code § 4165.02.  The statute provides, in part:

(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

The Ohio Court of Appeals explained in *Cesare v. Work*, 520 N.E.2d 586, 590 (Ohio Ct. App. 1987):

Initially, we note that there is a dearth of case law in Ohio concerning deceptive trade practices.  Consequently, where claims are made under Ohio common law and the deceptive trade practices statutes, courts are to apply essentially the same analysis as that applied in assessing unfair competition under the federal statutes. *Jewel Companies, Inc. v. Westhall Co.* (N.D. Ohio 1976), 413 F. Supp. 994, 999, affirmed (C.A.6, 1978), 575 F.2d 1176.  We therefore look to federal law for guidance on those issues not clearly addressed by Ohio case law.

R. C. 4165.03 provides, in part:  "A person injured by a deceptive trade practice of another may recover actual damages."  R.C. 4165.03 also provides for injunctive relief.  Generally, courts grant injunctive relief upon a showing of a "likelihood of confusion."  *Carson v. Here's Johnny Portable Toilets, Inc.* (C.A.6, 1983), 698 F.2d 831; *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville,*

19

*Inc.* (C.A.6, 1982), 670 F.2d 642; *Anheuser–Busch, Inc. v. Florists Assn. of Greater Cleveland, Inc.* (N.D. Ohio 1984), 603 F. Supp. 35; cf. *Mr. Gasket Co. v. Travis* (1973), 35 Ohio App.2d 65, 64 O.O.2d 192, 299 N.E.2d 906.  However, in order to award monetary relief, courts generally require "something more," such as evidence of actual losses suffered by the plaintiff or evidence of actual confusion of some customers.  *Frisch's Restaurants, Inc., supra,* 670 F.2d, at 647; see, generally, 2 McCarthy, Trademarks and Unfair Competition (2 Ed.1984) 494, 495–496, Section 30:24 (hereinafter "McCarthy").

Haas Garage Door asserts that for the same reasons Haas Door cannot establish prior use of the HAAS mark, Haas Door is not entitled to any relief under its state law claims with respect to the mark.  However, Haas Door is entitled to use the HAAS mark for the design, manufacturing, and branding of garage doors.  Thus, Haas Garage Door is not entitled summary judgment on this argument.

Haas Garage Door also contends that § 4165.04(B) bars Haas Door from any relief under § 4165.02(A)(2) and § 4165.02(A)(3) with respect to the HAAS mark.  The paragraph states:

(B) Divisions (A)(2) and (3) of section 4165.02 of the Revised Code do not apply to the use of a service mark, trademark, certification mark, collective mark, trade name, or other trade identification that was used and not abandoned before September 25, 1969, if the use was in good faith and otherwise is lawful except for this chapter.

Although Haas Garage Door is correct that Kenneth Haas began using the HAAS mark before September 25, 1969, the mark was for *two different* garage businesses — garage door retail sales, installations, and services represented by Haas Garage Door and the design, manufacturing, and branding of garage doors represented by Haas Door.  Each company is entitled to use the mark for their respective areas of commerce.  As the Ohio Court of Appeals noted in *F.A.R. Food, Inc. v. R. Fresh, L.L.C.*, No. 06 MA 149, 2007 WL 1630252, at *4 (Ohio Ct. App. May 31, 2007), "The Act bars them from using the . . . name because the *manner* in which they are using that trade name now is very different than the way they used it prior to 1969."

20

Haas Door is accusing Haas Garage Door of using the HAAS mark in a manner beyond which the mark was used by Haas Garage Door prior to 1969.  Because Haas Garage Door is alleged to have been using the HAAS mark beyond the scope of the mark it was given prior to 1969, § 4165.04(B) does not bar Haas Door from relief under § 4165.02(A)(2) and § 4165.02(A)(3).  *Id.*  Therefore, Haas Garage Door is not entitled to summary judgment regarding Haas Door's § 4165.02 allegations.

### VIII.  Attorney's Fees

Haas Garage Door seeks an order that no portion of Haas Door's attorney's fees be attributable to the company's allegations regarding the HAAS, HAAS DOOR, and HAAS DOOR COMPANY marks, the '259 Reg., and Haas Door's efforts attributable to pursuing claims stemming from Haas Garage Door's use of the HAAS mark.  The motion is denied.  Haas Door has the right to use the HAAS mark and to protect its mark regarding the design, manufacturing, and branding of garage doors.  Further, the Court has found the '259 Reg. to be valid.  Given the posture of the case, any ruling regarding an award of attorney's fees would be inappropriate.

### IX.  AMERICAN TRADITIONS SERIES Trademark

In addition to seeking summary judgment regarding the validity of the '259 Reg. trademark, Haas Door has also filed a motion for partial summary judgment regarding Haas Garage Door's liability for violating Haas Door's rights to its AMERICAN TRADITIONS SERIES trademark under § 1125(a)(1)(A) and Ohio Rev. Code Chapter 4165.

Haas Door alleges that since February 2005, it has used the trademark AMERICAN TRADITIONS SERIES in connection with high end garage doors which it manufactures.  Haas Door states it has continuously used this mark on garage doors since that time.  The company advertises the brand of garage doors in its brochures and on its website.

21

Haas Door states AMERICAN TRADITIONS SERIES brand garage doors are carriage house style garage doors having decorative overlays and hardware added to mimic the appearance of stable doors which may have stored carriages and/or horses.  Haas Garage Door has admitted to adding overlays to base model garage doors to create a carriage house designed garage door.  Haas Garage Door is also alleged to have admitted to "incorrectly" selling the modified doors to its customers using the AMERICAN TRADITIONS SERIES trademark without Haas Door's permission.

Haas Door contends that Haas Garage Door's assembled doors under the AMERICAN TRADITIONS SERIES brand has caused consumers to assume the two companies are one in the same, or that Haas Garage Door is a manufacturing source of Haas Door's products.  Haas Door states that consumer confusion has been increased by the fact that each time Haas Garage Door sold its modified carriage house style door as an AMERICAN TRADITIONS SERIES garage door, it did so using the HAAS mark.

Haas Garage Door counters that Haas Door is not entitled to summary judgment for trademark infringement regarding the AMERICAN TRADITIONS SERIES mark under § 1125(a)(1)(A) and Ohio Rev. Code § 4165.02.  Haas Garage Door asserts Haas Door has not established ownership of the AMERICAN TRADITIONS SERIES in connection with garage doors.

Haas Garage Door states the Lanham Act requires that the goods be used in a way "'which is typical in a particular industry'" and this standard "'should be interpreted with flexibility so as to encompass various genuine, but less traditional trademark uses, such as those made in test

22

markets [and] infrequent sales of large or expensive items.'" *NetJets, Inc. v. IntelliJet Grp., LLC*, 602 F. App'x 242, 245 (6th Cir. 2015) (quoting S. Rep. No. 100–515, at 44 (1988)).

Haas Garage Door states the ordinary course of trade in the garage door industry involves placing stickers or labels on garage doors.  Haas Door contests this position.  Haas Garage Door states Haas Door has marked its garage doors with stickers having a bar code and "manufacturing information."  Haas Garage Door asserts there is no evidence Haas Garage ever marked a garage door, or any garage door hardware, with a label or sticker which bears the words AMERICAN TRADITIONS SERIES.

Haas Garage Door contends the bar codes and manufacturing information stickers are not uses in commerce of a trademark so as to acquire rights in the mark under the Lanham Act. Haas Garage Door argues the mere advertising of the mark on Haas Door's website and in brochures does not establish the use of the mark in commerce for the purposes of the Lanham Act.

In *International Bancorp, LLC v. Societe des Bains de Mer*, 329 F.3d 359, 364 (4th Cir. 2003), the court noted:

> Consistent with this definition of the statutory "use in commerce" requirement, the Supreme Court has said that "[t]here is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. . . .  [T]he right to a particular mark grows out of its use, not its mere adoption;" *United Drug Co. v. Theodore Rectanus, Co.*, 248 U.S. 90, 97, 39 S. Ct. 48, 63 L. Ed. 141 (1918).  Because a mark is used in commerce only if it accompanies services rendered in commerce, *i.e.*, it is employed appurtenant to an established business or trade that is in commerce, "mere advertising" of that mark does not establish its protectability, though advertising is itself commerce that Congress may regulate.

The evidence shows Haas Door has gone beyond just mere advertising the AMERICAN TRADITIONS SERIES on its website and in brochures.  The Lanham Act provides:

23

The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—

(1) on goods when—

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and . . .

15 U.S.C. § 1127.

Haas Door uses the AMERICAN TRADITIONS SERIES on the container for the goods. The hardware for the garage door is packaged, along with the installation and care manual, in the box which accompanies the AMERICAN TRADITIONS SERIES garage doors.  Further, the hardware is an essential part of the doors as the garage doors cannot be used without the accompanying hardware.  The door and hardware are shipped in packages bearing the AMERICAN TRADITIONS SERIES mark.  The mark is also used on the instruction manual for the installation, use, and maintenance of the product.  The use of the AMERICAN TRADITIONS SERIES mark on the containers, packaging, and manuals of the garage doors and hardware is sufficient to establish the mark for protection under the Lanham Act.  *See id.*; *Montgomery v. Noga*, 168 F.3d 1282, 1301 (11th Cir. 1999); *Loegering Mfg., Inc. v. Grouser Prods., Inc.*, 330 F. Supp.2d 1057, 1070–71 (D. N.D. 2004).  Accordingly, Haas Door's AMERICAN TRADITIONS SERIES mark is protected under the Lanham Act.

The Court, having found the AMERICAN TRADITIONS SERIES protected, the next question is whether Haas Door is entitled to summary judgment on its claim of trademark infringement of that mark under § 1125(a)(1)(A).  As the Court previously noted, to establish a claim of infringement under § 1125(a), Haas Door must establish:  1) ownership of a specific

24

service mark in connection with *specific* goods or services; 2) continuous use of the mark; 3) establishment of secondary meaning if the mark is descriptive; and 4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' *respective* services. *Homeowners Grp.*, 931 F.2d at 1105. The Sixth Circuit has identified the following factors in determining the likelihood of confusion: 1) strength of the plaintiff's mark; 2) relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of purchaser care; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. *Frisch's Rest.'s*, 670 F.2d at 648.

Haas Door has established ownership of the AMERICAN TRADITIONS SERIES mark. The mark has been in continuous use since February 2005. The mark is not descriptive so a secondary meaning is not necessary. *Homeowners Grp.*, 931 F.2d at 1105. Regarding the likelihood of confusion element, *id.*, the Court finds the eight factors of *Frisch's* weighs in favor of Haas Door. *Frisch's Rest.'s*, 670 F.2d at 648.

Haas Door has been promoting its AMERICAN TRADITIONS SERIES doors for over ten years, advertising this line in brochures and on the Internet. The company has used the mark on its containers, packaging, and instruction manuals. In addition, Haas Door has sold tens of thousands of its doors using the AMERICAN TRADITIONS SERIES. Based on these facts, the Court finds the mark is strong and well established.

Regarding the relatedness of the goods, they are identical. Both Haas Door and Haas Garage Door are in the garage door business. However, they have different, unrelated functions in the field. Although Haas Door actually produces the product, Haas Garage Door sells the product

25

to the consumer.  Any use of the mark by Haas Garage Door to any of its products would therefore involve the same product, garage doors.  As for the similarity of the marks, they are identical as Haas Garage Door has admitted to using the exact mark on doors not produced by Haas Door.

The evidence of actual confusion is well documented as consumers have been  misled by Haas Garage Door into believing they were purchasing garage doors made by Haas Door. Evidence also shows Haas Garage Door has aggressively marketed its version of the AMERICAN TRADITIONS SERIES at its place of business.

In assessing the likelihood of confusion to the public, the record establishes that Kris Phillips, an architect, had sought a Haas Door for his personal use.  Despite doing due diligence and meeting with Thomas Haas on multiple occasions, Mr. Phillips was deceived into believing he was purchasing an AMERICAN TRADITIONS SERIES brand garage door.  He was misled into believing that both Haas Door and Haas Garage Door produced the same product, but at different locations.  Upon receiving the door purchased from Haas Garage Door, Mr. Phillips noticed the differences regarding the quality of the door.  He subsequently learned that both companies did not produce the AMERICAN TRADITIONS SERIES brand garage door.  The brand was only produced by Haas Door.

Brian King is the owner/operator of a retail garage door sales, installation, and repair business called Dekalb County Door, located in Garrett, Indiana.  In 2011, Mr. King wanted to expand his business.  Mr. King sought a new garage door manufacturer.  After doing research, Mr. King wanted to engage in a business relationship with Haas Door.  Mr. King mistakenly found Haas Garage Door's website.  A meeting with Thomas Haas was held.  Mr. King was misled into believing he was engaging in a business relationship where he was obtaining doors directly from

26

the manufacture, i.e. Haas Door.  Upon learning he was not dealing with Haas Door, Mr. King terminated his relationship with Haas Garage Door.  These events show the likelihood of confusion among the public even when the purchaser is sophisticated and engages in due diligence.

Haas Garage Door's intent in using the AMERICAN TRADITIONS SERIES mark is undisputable.  The company was using the mark to deprive Haas Door of customers and sales. The events with Mr. Phillips and Mr. King establish that Haas Garage Door was intentionally using the mark to mislead the public into thinking they were purchasing products manufactured by Haas Door.

As for the likelihood of expansion of the product lines, a trademark owner is afforded greater protection against competing goods.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) (adopted with approval by the Sixth Circuit in *Frisch's Rest.'s*, 670 F.2d at 648).  A "strong possibility" either party may expand his business to compete with the other will weigh in favor of finding the present use is infringing.  *Id*.  When goods are closely related, any expansion is likely to result in direct competition.  *Id*.  The evidence shows Haas Garage Door is attempting to present itself as a manufacturer of garage doors, despite Haas Door's trademarks in the field. Thus, Haas Garage Door's apparent attempts to engage in some type of designing or manufacturing would place the company in the competing submarket of Haas Door.

After having now analyzed the four factors of *Homeowners Group* and the eight factors of *Frisch's*, the Court concludes Haas Garage Door has infringed on Haas Door's AMERICAN TRADITIONS SERIES trademark in violation of § 1125(a)(1)(A).  Accordingly, Haas Door is entitled to summary judgment on this claim.

27

The next issue is whether Haas Door is entitled to summary judgment regarding Haas Garage Door's alleged violations of Ohio Rev. Code § 4165.02 as applicable to the AMERICAN TRADITIONS SERIES trademark.  As previously explained regarding the HAAS mark, § 4165.02 provides, in part:

> (A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
>
> (1) Passes off goods or services as those of another;
>
> (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;
>
> (4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

For the same reasons Haas Garage Door has infringed on Haas Door's AMERICAN TRADITIONS SERIES trademark in violation of § 1125(a)(1)(A), so too has it violated § 4165.02.  The previously summarized evidence establishes that Thomas Haas has engaged in conduct where he attempted to sell garage doors as having been made by Haas Door; Thomas Haas caused confusion and misunderstanding regarding the source of the doors which Mr. Phillips and Mr. King wished to purchase; and Thomas Haas caused a likelihood of confusion by attempting to convince Mr. Phillips and Mr. King that Haas Door has two manufacturing plants.

In addition, Haas Garage Door's website from approximately 2010 until December 2014 referred to Haas Door's products as "Our American Tradition [sic] Series."  The website during this period referred to each of Haas Door's products as "ours," with a link directly to Haas Door's product brochures.  Although the website displayed several logos from other manufacturers, Haas

28

Door's logo was not displayed.  Given Thomas Haas's conduct and Haas Garage Door's website, the Court finds Haas Garage Door has violated § 4165.02 with regards to Haas Door's AMERICAN TRADITIONS SERIES trademark.  Accordingly, Haas Door is entitled to summary judgment regarding this claim.

Haas Garage Door, in its defense, contends there is a genuine issue of fact as to whether Haas Door acquiesced to allowing Haas Garage Door to use the AMERICAN TRADITIONS SERIES trademark.  Haas Garage Door contends the doctrine of "[l]aches is a negligent and unintentional failure to protect one's rights while acquiescence is intentional." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991).  The Sixth Circuit observed: "Acquiescence requires a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." *Elvis Presley*, 936 F.2d at 894 (internal quotation marks and citation omitted).

Haas Garage Door contends the language used on its website was done with the knowledge and consent of one Jim Trask, an employee of Haas Door.  Thomas Haas admitted in his deposition that Mr. Trask is deceased and he did not know if Mr. Trask was a sales or general manager.  Thomas Haas also testified Haas Garage Door built five carriage houses with modified AMERICAN TRADITIONS SERIES doors, again with Mr. Trask's consent.  Further, Mr. Nofziger testified he was aware that dealers and distributors modified Haas Door products, such as adding overlays.  Haas Garage Door contends given these facts, a question remains as to whether Haas Door acquiesced to its use of the AMERICAN TRADITIONS SERIES trademark.  Haas Door contends the defense has been waived as it was not raised in Haas Garage Door's answer or amended answer.

29

The failure to raise an affirmative defense in a responsive pleading does not always result in waiver. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993).  The Supreme Court has held the purpose of Federal Rule of Civil Procedure 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it.  *Blonder–Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971).  "Thus, if a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Moore*, 992 F.2d at 1445 (internal quotation marks and citations omitted).  Here, Haas Garage Door raised the issue of acquiescence in its response to Haas Door's motion for summary judgment.

Acquiescence is an affirmative defense, *see Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 575 (6th Cir. 2000), with its own elements of proof.  *Id*. at 569–70.  Discovery is now closed.  Haas Door argues it is unable to conduct discovery regarding the elements of this defense and is therefore prejudiced.

Assuming for the sake of argument that the defense has not been waived and Haas Door has not been prejudiced, the defense cannot be considered as it is based upon the inadmissible hearsay testimony of Mr. Trask.  In *Anthony v. DeWitt*, 295 F.3d 554, 563 (6th Cir. 2002), the court stated:

> The definition of hearsay is the same under both the Ohio and Federal Rules of Evidence.  That is, hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'  Evidence is not hearsay if it is not offered to prove the truth of the matter asserted.

(citations omitted).

Mr. Trask's alleged statements meet the very definition of hearsay evidence.  *Id.*  The Sixth Circuit has held that a district court may not consider unsworn, hearsay evidence in deciding whether or not to grant a motion for summary judgment.  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480–81 (6th Cir. 2008); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006).  Because Mr. Trask's alleged out-of-court statements, which lack any verification, are considered hearsay, they may not be considered in deciding the current motion for summary judgment.  *Sigler*, 532 F.3d at 480–81; *Pack*, 434 F.3d at 815.

Because Haas Garage Door's acquiescence defense regarding the AMERICAN TRADITIONS SERIES mark is based solely on inadmissable hearsay evidence of a deceased individual, the company has not shown a dispute of fact so as to prevent Haas Door from obtaining summary judgment under § 1125(a)(1)(A) and Ohio Rev. Code § 4165.02.  Therefore, the Court finds Haas Garage Door's affirmative defense argument to be without merit.

## X.  False Advertising

Haas Door moves for summary judgment on its claim of false advertising under § 1125(a)(1)(B) with respect to Haas Garage Door's use of what is described as the "Green Label."  The Green Label (Doc. No. 53, Ex. 15), is a green, black, and white label.  At the top of the label is a large block "H" with the word "HAAS" inside the center bar of the "H".  The label says:

HAAS
GARAGE DOOR COMPANY

26020 Glenwood Rd., Perrysburg, OH 43551
Ph. 419/874-4356, 1 -800-707-4227

MANUFACTURERS OF:  RESIDENTIAL, COMMERCIAL
& INDUSTRIAL OVERHEAD DOORS & ELECTRIC OPENERS

31

To establish a claim of false advertising under § 1125(a)(1)(B), a plaintiff must show:  1) the defendant has made false or misleading statements of fact concerning his own product or service, or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff. *American Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).  The proof required under these elements varies depending upon the type of relief which is sought.  *Id*. at 614.  Where a party is seeking monetary relief and the statements are literally false, a plaintiff may establish a violation of the Lanham Act without evidence the statement actually misled consumers.  Actual deception is presumed.  *Id*.

A literally false statement must be one that is unambiguous on its face.  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm., Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002).  If the language of the advertisement is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false.  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007).  The Sixth Circuit has stated that the "greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported."  *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 736 (6th Cir. 2012).

The false statement on the Green Label is that Haas Garage Door are "MANUFACTURERS OF:  RESIDENTIAL, COMMERCIAL & INDUSTRIAL OVERHEAD DOORS & ELECTRIC OPENERS."  As the Court has gone to great lengths to explain, Haas

32

Garage Door does not manufacture garage doors, nor does the company manufacture electric openers.

Haas Garage Door has used the label on every door it installed or serviced for years. Because the advertisement is literally false, there is no need for evidence on the issue of the impact of the statement on consumers.  The Court will presume the statement actually deceived the consumers.  *American Council*, 185 F.3d at 614.  Further, the false statement is presumed to be material.  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000).

The Green Label contains a literal false statement which leads to the presumption that Haas Garage Door has actually deceived consumers, and the false statement is likely to have deceived the consumers' purchasing decisions.  *Id*.; *American Council*, 185 F.3d at 614. Therefore, Haas Garage Door's false statement satisfies the second and third elements of § 1125(a)(1)(B).

Further, to satisfy § 1125(a)(1)(B), the advertisements must have been introduced into interstate commerce.  *American Council*, 185 F.3d at 613.  "Commerce" is defined by 15 U.S.C. § 1127 as "all commerce which may lawfully be regulated by Congress."

Haas Garage Door admits that the Green Label has been used on every door installed or serviced by the company between approximately 1990 and 2013.  Thousands of these labels have been used over the years.  Further, Haas Garage Door has installed and serviced garage doors across state lines, with evidence showing thousands of jobs being conducted in Ohio and Michigan.  For these reasons, Haas Door has shown the Green Label has been introduced into interstate commerce.

Finally, there must exist a causal link between the statements in question and a harm to Haas Door. *Id.* Haas Garage Door has engaged in conduct which has deceived consumers to believe that Haas Garage Door manufactures Haas Door products. This is shown by not only its website, but also by the conduct of Thomas Haas to customers. The label also deceives customers into believing they are buying garage doors that Haas Garage Door manufactures, when in fact the doors are manufactured by Haas Door.

Both companies can legitimately use the HAAS mark for their respective businesses. However, the Green Label, coupled with the HAAS mark, leads consumers to believe that Haas Door and Haas Garage Door are in the same business. In addition, instead of selling, installing, and repairing garage doors, Haas Garage Door is competing with Haas Door by representing itself as a manufacturer of Haas Door products. This misrepresentation harms Haas Door by depriving the company of the opportunity to offer customers its products, made to its standards, policies, and warranties. Because there is no genuine issue of fact that Haas Door has established the five elements for a false advertising claim under § 1125(a)(1)(B), the company is entitled to summary judgment on this issue.

Haas Garage Door argues that Haas Door is not entitled to summary judgment regarding the false advertising claim as genuine issues of material fact exist relating to: 1) whether Haas Door acquiesced to Haas Garage Door's use of the Green Label; 2) whether the claim is barred by the equitable doctrine of unclean hands; and 3) whether the claim is barred by the equitable doctrine of laches. As the Court previously discussed regarding the defense of acquiescence regarding the AMERICAN TRADITIONS SERIES trademark, the failure to raise an affirmative defense by responsive pleading does not always result in waiver. *Moore*, 992 F.2d at 1445. Rule

34

8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it.

*Blonder–Tongue*, 402 U.S. at 350.  "Thus, if a plaintiff receives notice of an affirmative defense

by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not

cause the plaintiff any prejudice. " *Moore*, 992 F.2d at 1445 (internal quotation marks and

citations omitted).  Haas Garage Door raised the issue of acquiescence and the doctrine of unclean

hands in its response to Haas Door's motion for summary judgment.

The equitable defense of unclean hands, like the defense of acquiescence, is an affirmative

defense.  *Broadcast Music, Inc. v. Claire's Boutiques, Inc.*, 949 F.2d 142, 1486 (7th Cir. 1991);

*Pierce v. Apple Valley, Inc.*, 597 F. Supp. 1480, 1485 (S.D. Ohio 1984).  As with its acquiescence

defense regarding the AMERICAN TRADITIONS SERIES, Haas Garage Door failed to plead the

unclean hands doctrine in not only its original answer, but also in its answer to Haas Door's first

amended complaint.

The Court does not need to determine whether the defenses of acquiescence and unclean

hands regarding Haas Door's false advertising claim has been waived.  Like the defense under the

doctrine of laches, these defenses cannot be considered by the Court as they all rely on the hearsay

evidence of Mr. Trask.

The doctrine of laches was properly pled in Haas Garage Door's answers.  Haas Garage

Door's laches defense is based on the alleged statements of the now deceased Mr. Trask.  The

company concedes that the statements are not in writing and that Mr. Trask was the only person

who had knowledge of the alleged consents.

As previously explained, Mr. Trask's alleged statements meet the definition of hearsay

evidence.  *Anthony*, 295 F.3d at 563.  The Sixth Circuit has held that a district court may not

35

consider unsworn, hearsay evidence in deciding whether or not to grant a motion for summary judgment.  *Sigler*, 532 F.3d at 480–81; *Pack*, 434 F.3d at 815.  Because Mr. Trask's alleged out-of-court statements, which lack any verification, are considered hearsay, they may not be considered in deciding the current motion for summary judgment.  *Sigler*, 532 F.3d at 480–81; *Pack*, 434 F.3d at 815.

As Haas Garage Door's acquiescence, unclean hands, and laches defenses are based solely on inadmissable hearsay evidence, the company has not shown a dispute of fact so as to prevent Haas Door from obtaining summary judgment on its false advertising claim under § 1125(a)(1)(B).  Therefore, the Court finds Haas Garage Door's affirmative defense arguments to be without merit.

## XI.  Conclusion

Accordingly, with regards to Haas Garage Door's motion for summary judgment (Doc. No. 51), the Court:

1) denies the motion on its counterclaim seeking cancellation of Haas Door's federal trademark;

2) denies the motion regarding ownership of the marks HAAS, HAAS DOOR, and HAAS DOOR COMPANY;

3) denies the motion regarding Haas Door's claims under § 1125(a) and § 1114;

4) denies the motion regarding Haas Door's claims under Ohio Rev. Code § 4165.02 with respect to the HAAS mark; and

5) denies the request seeking a ruling on the entitlement of Haas Door to attorney's fees.

Regarding Haas Door's motion for summary judgment (Doc. No. 53), the Court:

36

1) grants its motion for summary judgment regarding the validity of the federal trademark;

2) grants its motion that Haas Garage Door violated its rights to the AMERICAN TRADITIONS SERIES trademark under 15 U.S.C. § 1125(a)(1)(A) and Ohio Rev. Code Chapter 4165; and

3) grants its motion that Haas Garage Door engaged in false advertising under 15 U.S.C. § 1125(a)(1)(B).

The Court further certifies that a copy of this order is being sent to the Director of the United States Patent and Trademark Office pursuant to 15 U.S.C. § 1119.

IT IS SO ORDERED.

  s/ *David A. Katz*  
DAVID A. KATZ  
U. S. DISTRICT JUDGE

37